No. 4421.

## Court of Appeal, Parish of Orleans.

## LEON H. JASTREMSKI VS. HARDY & AYER.

Questions of fact only are involved herein.

Appeal from Civil District Court, Division "A."

Lapeyre, Monroe & Breazeale, for Plaintiff and Appellee.

B. R. Forman, for Defendant and Appellant.

MOORE, J. The plaintiff resides in the Parish of Terrebonne, called at the Livery, Sale and Commission Stables of defendants', who are doing business in the city of New Orleans, on the 6th of December, 1905, for the purpose of purchasing a horse. He there met the senior member of the firm, Mr. Hardy, with whom he was acquainted, and made known to him his mission. Mr. Hardy then called on one Arthur Gerhki, whom plaintiff regarded as a clerk of defendant, and directed Gerhki to take plaintiff through the stable, and "show him the stock." After looking over the stock, plaintiff finally selected a certain bay horse, the price agreed therefor being $150.00 f.o.b. However, at the time of the purchase, plaintiff noticed that there was "something wrong" about the eyes of the horse, and calling Gerhki's attention thereto, the latter remarked, "yes, one eye is out but the other is good," adding, "if anything is wrong about the other (eye) we will make it good." On this condition the horse, together with a mare, bought at the same time for $125.00, was ordered shipped to plaintiff, the latter then and there making out his check for $275.00, the price of the horse and mare. The check was made payable to the order of Hardy & Ayer, their names being *printed* thereon, for it was on a blank check with their names printed thereon as payees and furnished by them for the purpose, that was used by plaintiff in the transaction. The check was subsequently deposited by defendants in their bank to their account and in due course was presented for payment to the bank on which it was drawn and was passed to defendants' credit. A receipted bill being then and there given to the plaintiff, the two animals were then shipped by Hardy & Ayer, as consignors, to the plain-

172

tiff. Within three weeks, after the horses had been received by plaintiff, it developed that the bay horse had gone blind in both eyes. Thereupon plaintiff called Hardy & Ayer over the telephone and informed him of the condition of the bay horse. Hardy replied: "That's all right; but I'll call Albert (meaning Gerhki) to the phone." Gerhki then coming to the phone answered that "they would give me another horse." The horse was then shipped back to Hardy & Ayer and was by them duly received. Thereafter plaintiff visited defendants' stable for the purpose of selecting another horse for the one returned, but finding none suitable demanded the return of the $150.00 paid therefor. This being refused this suit for the return of the price paid was instituted. The answer denies that defendants sold the horse to plaintiff, and avers that it was sold to him by Albert Gerhki, whom it is alleged is "one of defendants' customers," and from whom plaintiff received a bill of sale therefor; that defendants had no interest in the transaction; that the horse did not go blind; that defendants hold the horse at plaintiff's risk and expense and subject to his order and they finally, assuming the character of plaintiff in reconvention, claim the sum of $67.00 of plaintiff for board and keeping the horse.

After the answer was filed and plaintiff advised of its nature, he looked up his receipt, or bill, for the horse, and for the first time and to his surprise, he found that although the bill was made out on a printed bill-head of the defendant's on which their firm name was printed in large heavy and conspicuous letters, a light line had been drawn across it and the name of A. Gerhki written on the margin.

The entire transaction on the part of defendants does not impress us favorably, nor did it our esteemed brother of the lower Court, who resolved the case in favor of the plaintiff, awarding him judgment for the amount sued for, and rejecting defendant's reconventional demand. His reasons for judgment, which are in writing, we reproduce and adopt as our own. They are as follows:

I think that defendants are estopped from denying that they sold the horse to plaintiff, or from maintaining that Alfred Gerhki sold said horse to plaintiff. The stables are kept in their name. The bill-head is printed in their name. The check that paid for the horses was to their order. As con-

signor, they shipped the two horses to plaintiff, and as consignee they received back from plaintiff the unsatisfactory horse. As payees of plaintiff's check they indorsed it and deposited it for their account. In all these matters of record, or writing, the name of Alfred Gehrke does not appear save in the bill of sale, where he (Gehrke) drew a faint line across defendants' name in the printed bill-head and added his own, and signed the paper and handed it to plaintiff, but without calling plaintiff's attention to the fact that he had done so, and without disclosing that he was the vendor, and that defendants had naught to do with the sale. Nor did defendants tell plaintiff that Gehrke was the person who would sell horses to him, and not themselves.

Plaintiff may well have thought that Gehrke was only defendants' employee. He swears that he did so think, and the check to defendants' order, and its use by them, and the shipment in defendants' name from New Orleans to Houma, and back from Houma to New Orleans, and their receipt of the returned horse, and their claim in reconvention for feeding the horse since it was returned, made out against plaintiff, and not against Gehrke, are facts that amply justify the plaintiff in his belief that he was dealing with defendants.

In their answer defendants refer to "Albert Gehrke" as "one of defendants' customers." Why did not they, or Gehrke, when plaintiff called on them to buy from them, tell plaintiff, "We have no horse to sell, but Gehrke can sell to you"? If the plaintiff came to deal with a responsible firm, and dealt with them in that belief, as the place (defendants' stables), the check, the two consignments and all that happened attest, the defendants must accept the responsibility of the situation in which they placed themselves, because they failed to notify plaintiff that he was dealing with Gehrke, and not with them. What was there in all that Gehrke did to induce plaintiff to believe that Gehrke was "one of defendants' customers," and not their clerk or representative? It is true Gehrke made out the bill and erased defendants' names and added his own, and signed his name, but he did not call plaintiff's attention to the fact that he had done so, and plaintiff, just as ninety-nine men out of any one hundred would have done, put the bill in his pocket without looking at it and went his way.

It is only after plaintiff brought this suit, at cost and trouble to himself, and after vainly trying to have defendants make good their agreement to furnish him another horse in lieu of the horse returned, that they gave notice in their formal pleading that Gehrke was the vendor and warrantor and promisor, and that they had naught to do with the matter.

I saw and heard the plaintiff testify, and I have full faith in his truthfulness and integrity, and I think, regardless of whatever may have been the secret dealings or understandings between defendants and Mr. Gehrke, that they must respond to plaintiff's demands and make good what their conduct and Gehrke's, and especially their silence, when they were taking plaintiff's money and making and receiving in their names consignment of the horses to and from plaintiff, induced the plaintiff in good faith to believe, was warranted and promised by them, and in their name.

If aught was needed to make absolute this conclusion of fact and of law it is found in the recitals and the prayer of defendants' answer and reconventional demand, to which comment along the line of thought arising from the estoppel suggested could add nothing.

My conclusion is that, having received and kept the plaintiff's money (the price of the horse), and having received back the horse on the promise to substitute another of proper value, and having failed to make good that promise when plaintiff made efforts to have them comply with it, they owe him the amount for which he sues, with interest and costs.

Judgment for plaintiff as prayed for against defendants, and also dismissing their reconventional demand at their cost.

T. C. W. Ellis, *Judge.*

New Orleans, La., December 12, 1907.

In this Court the defendants filed the plea of prescription of two months, on the theory that the action was the redhibitory action, and as it was brought more than two months after the sale, the action was prescribed under Art. 2535 C. C. This, however, is not the redhibitory action, but one to enforce the agreement or contract under which the horse was returned to defendants; *id est.*, that they would make it (the return) good by giving in its stead another horse. None having been offered that was worth the amount paid ($150), the plaintiff is entitled under

this contract to the return of his money.

The judgment appealed from is affirmed.